FILED

2013 Jan-04  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JERRY MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-1106-NW** |
| | ) | |
| **TOWN OF LEXINGTON, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jerry Morris, accuses six municipal law enforcement officers of violating his federal- and state-law rights while investigating a 911 telephone call.[1] During the course of the investigation, plaintiff was arrested for punching an officer who refused to leave his home.[2]  As a result of the incident, plaintiff was indicted by a state-court grand jury on two counts of assault in the second degree and one count of resisting arrest, but he was subsequently acquitted in a criminal trial.[3]

Plaintiff asserts claims under the United States Constitution through the remedial vehicle of 42 U.S.C. § 1983 for unlawful entry, illegal seizure, unlawful search, malicious prosecution, and excessive force.[4]  In addition, plaintiff asserts

---

[1] *See* doc. no. 44 (Second Amended Complaint).

[2] *Id.* ¶¶ 28-29, 36.

[3] *Id.* ¶¶ 47-48.

[4] *Id.* ¶¶ 51-68.

supplemental state-law claims for false arrest/false imprisonment, assault and battery/excessive force, trespass (entry), trespass (search), negligence, wantonness, and malicious prosecution.[5]  *See* 28 U.S.C. § 1367.  Plaintiff seeks relief against the individual officers and their municipal employers.[6]

This action is before the court upon motions to dismiss various portions of the second amended complaint by four of the six individual defendants and both of the municipal defendants.[7]  Upon consideration, this court will grant the motions to dismiss in part, and deny the motions in part.  Further, this court will order plaintiff to show cause why his claims against Town of Anderson Reserve Police Officer Matt Wigginton should not be dismissed for failure to prosecute.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other things, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that

---

[5] *Id.* ¶¶ 69-89.

[6] *Id.* ¶¶ 51-89.

[7] *See* doc. nos. 48 (Motion to Dismiss by Mark Bowers); 50 (Motion to Dismiss by Town of Anderson); 56 (Motion to Dismiss by Patrick Davis and James Distefano); 81 (Motion to Dismiss by Lee Bradford); 89 (Motion to Dismiss by Town of Lexington).

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

Even though the Eleventh Circuit long held claims asserted under § 1983 against individual officers to a higher-than-usual standard — *see*, *e.g.*, *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998) (observing that "this circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims") — the Circuit's opinion in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), observes that utilization of such a heightened pleading standard is no longer warranted, in light of the plausibility requirement articulated in the Supreme Court's *Iqbal* opinion.

3

[Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards *in general*, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing *Twombly*, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss. The Court did not apply a heightened pleading standard.

While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004)] , *GJR*, and *Danley* [*v. Allen*, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that *those cases were effectively overturned* by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall*, 610 F.3d 709-10 (bracketed alterations and emphasis supplied).

## II.  FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the

district court is required to assume that

the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453 (2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023

4

> (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by
> "[a]ccepting all well-pleaded factual allegations (with reasonable
> inferences drawn favorably to Plaintiffs) in the complaint as true").
> Because we must accept the allegations of plaintiff's complaint as true,
> what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes
> may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006)

(alterations supplied).

In the early morning hours of April 19, 2009, a highly intoxicated woman who had been abandoned on plaintiff's property called 911 to request assistance, saying that she did not know where she was and had no means of transportation.[8]  Four of the six individual defendants initially responded to the call: *i.e.*, Lee Bradford, a police officer for the Town of Lexington, Alabama;[9] Mark Bowers, the police chief for the Town of Anderson, Alabama; and, Matt Wigginton and Jan Montgomery, both of whom were "reserve" police officers for the town of Anderson.[10]

During her 911 telephone call and subsequent conversations with the four officers, the woman did not make any accusations against plaintiff.[11]  Instead, she

---

[8] Doc. no. 44 (Second Amended Complaint) ¶ 10.  The complaint gives no further clues on how the woman came to be "abandoned," or how plaintiff and the officers learned about the "abandonment."

[9] Lexington is a town in Lauderdale County, Alabama.  It is part of the Florence-Muscle Shoals Metropolitan Statistical Area.

[10] Doc. no. 44 (Second Amended Complaint) ¶¶ 4-7, 11.  Anderson, like Lexington, is a town in Lauderdale County, Alabama, and a part of the Florence-Muscle Shoals Metropolitan Statistical Area.

[11] *Id.* ¶ 12.

claimed "vaguely and generally" that she was in danger, and that someone had been beating plaintiff's horses.[12]  While the woman sat on plaintiff's porch in a chair, the officers knocked on his door.[13]

 Eventually, plaintiff was awakened by his girlfriend and came to the door.[14] When the officers asked about the woman, plaintiff responded that he did not know her, but that he knew her sister.[15]  When told of the woman's statement that "someone" had been beating his horses, plaintiff expressed concern for the horses and said that, after he placed some boots on his feet, he would go check on them.[16]

In the presence and hearing of the other three officers, Lexington Police Officer Lee Bradford told plaintiff that he was "not going anywhere."[17]  Plaintiff was then standing inside his own home, on his side of the front door threshold.[18]  Despite Bradford's order that he "not go[] anywhere," plaintiff turned and walked back into his home, but he did not attempt to close the door.[19]

Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police

---

[12] *Id.* ¶ 13.

[13] *Id.* ¶ 14.

[14] Doc. no. 44 (Second Amended Complaint) ¶ 15.

[15] *Id.* ¶ 16.

[16] *Id.* ¶ 17.

[17] *Id.* ¶ 18.

[18] *Id.* ¶ 19.

[19] *Id.* ¶ 20.

Officer Matt Wigginton followed plaintiff into his home without a warrant and, allegedly, without either probable cause or any good reason for doing so.[20]  Plaintiff objected to the three officers' presence and repeatedly told them to leave his home, and to obtain a warrant before coming back.[21]

Eventually, Anderson Police Chief Mark Bowers and Anderson Reserve Police Officer Matt Wigginton walked outside, but Lexington Police Officer Lee Bradford remained, stopping in plaintiff's doorway and holding the door open.[22]  Plaintiff told Bradford that he was going to shut the door, and slowly began to push the door shut, but Bradford refused to move out of the doorway.[23]  During the verbal exchange between plaintiff and Bradford, Bowers and Wigginton remained on the porch.[24]  At some point, Bradford shoved plaintiff, and plaintiff punched Bradford one time.[25]

Defendants James Distefano and Patrick Davis — both of whom were employed by Lauderdale County as Deputy Sheriffs — had arrived on the scene after Bradford, Bowers, and Wigginton.[26]  Distefano and Davis allegedly knew that Bradford, Bowers, and Wigginton had no legitimate reason for entering plaintiff's

---

[20] Doc. no. 44 (Second Amended Complaint) ¶¶ 20-21.

[21] *Id.* ¶ 22.

[22] *Id.* ¶ 23.

[23] *Id.* ¶¶ 24-25.

[24] *Id.* ¶ 26.

[25] *Id.* ¶¶ 27-28.

[26] Doc. no. 44 (Second Amended Complaint) ¶¶ 8-9, 31.

home, and that the three of them had been told by the homeowner to leave his home and to obtain a warrant.[27]  Further, Distefano and Davis allegedly saw Bradford refuse to move out of the entry doorway and then shove plaintiff.[28]

After plaintiff punched Bradford, he — accompanied by Anderson Police Chief Mark Bowers, Anderson Reserve Police Officer Matt Wigginton, and Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis — entered the home, took plaintiff to the floor, and hit and kicked him.[29]  During the scuffle, Chief Bowers used his taser on plaintiff in "drive stun" mode, and did so at least once after plaintiff was handcuffed and no longer resisting arrest:  acts that left numerous burn marks on plaintiff's back.[30]

Eventually, Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, Anderson Reserve Police Officer Matt Wigginton, and Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis  handcuffed plaintiff and removed him from his home.[31]  After placing plaintiff in a patrol car, Bradford, Bowers, Wigginton, and Anderson Reserve Police Officer Jan Montgomery searched

---

[27] Id. ¶ 32.

[28] Id. ¶ 33.

[29] Id. ¶ 36.

[30] Id. ¶¶ 37-38.

[31] Doc. no. 44 (Second Amended Complaint) ¶ 39.

8

plaintiff's home and cars.[32]  It does not appear than any evidence of criminal activity was found.

A Lauderdale County grand jury issued a "no bill" on the charges against plaintiff in September of 2009, apparently concluding that the evidence of plaintiff's alleged wrongdoing was not convincing.[33]  The following month, plaintiff filed notices of claim with the Towns of Anderson and Lexington, and plaintiff's lawyer communicated in writing with their insurer.[34]

Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police Officers Matt Wigginton and Jan Montgomery then allegedly "met and agreed to a unified (false) version of events, went to the district attorney, and convinced the district attorney to resubmit the case to another grand jury."[35]

Defendants' false version of events allegedly included a general denial of plaintiff's allegations; a claim that Lexington Police Officer Lee Bradford, Anderson

---

[32] *Id.* ¶ 39.

[33] *Id.* ¶ 42.  A no bill is "a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged." *Rachal v. Quarterman*, 265 F. App'x 371, 379 (5th Cir. 2008) (internal citations omitted).  The complaint does not specify the offenses of which plaintiff was accused.

[34] *Id.* ¶ 43.  Plaintiff's second amended complaint alleged that a copy of a claim to Travelers Insurance Company was attached as Exhibit 1.  *Id.*  However, the record does not reflect the filing of such an exhibit.  *See* docket sheet entry for doc. no. 44.

[35] *Id.* ¶ 44.

Police Chief Mark Bowers, and Anderson Reserve Police Officer Matt Wigginton initially entered plaintiff's home with consent; a description of plaintiff as intoxicated, aggressive, and threatening; a claim that plaintiff slammed the door on Bradford without giving the officer a chance to leave the home; and a claim that Bradford only acted in self-defense, and never shoved plaintiff after being asked to leave.[36]

Based upon the foregoing account, the district attorney decided to resubmit the case to another grand jury.[37]  On or about November 6, 2009, a Lauderdale County grand jury returned an indictment against plaintiff for two counts of assault in the second degree (a felony), and one count of resisting arrest.[38]  Plaintiff was first tried in December of 2010, but the trial ended in a "hung jury."[39]  Plaintiff was then re-tried in January of 2011, and was acquitted of all charges.[40]

Plaintiff alleges that he suffered physical and emotional injuries and damages as a result of defendants' conduct, including embarrassment and humiliation.[41]  Plaintiff also incurred medical and legal bills and other expenses.[42]

---

[36] *Id.* ¶ 45.

[37] Doc. no. 44 (Second Amended Complaint) ¶ 46.

[38] *Id.* ¶ 47.

[39] *Id.* ¶ 48.  A hung jury is a jury that cannot reach a verdict by the required threshold after an extended period.  *See generally Brown v. Dugger*, 831 F.2d 1547, 1558 (11th Cir. 1987).

[40] Doc. no. 44 (Second Amended Complaint) ¶ 48.

[41] *Id.* ¶ 49.

[42] *Id.*

## III.  DISCUSSION

### A.   Claims Against the Municipal Defendants

The Supreme Court held in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that a local governmental entity cannot be held vicariously liable for violations of § 1983 by one of its employees under a theory of *respondeat superior*:  in other words, "a municipality cannot be held liable solely because it employs a tortfeasor."  *Id*. at 691.[43]  Instead, a municipality or county may be held accountable in damages for the conduct of a particular governmental actor only when the plaintiff shows that execution of the local governmental entity's official "policy" or "custom" effectively was the cause of the injury complained of.  *Id*. at 694.[44]  It does not matter whether the policy was enacted by the local governmental entity's

---

[43] *Respondeat superior* is a Latin phrase meaning "let the master answer," and it often is used to describe a doctrine imposing liability on one person for the actionable conduct of another, based solely on a relationship between the two persons; thus, liability in common law tort and contract actions often may be imputed to employers for the actions of their employees.  *See generally* BLACK'S LAW DICTIONARY 1313 (7th ed. 1999), defining *respondeat superior* as:  "The doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."  *See also* W. Page Keeton *et al*., THE LAW OF TORTS § 69, at 500 (5th ed. 1984), observing that:

> Most courts have made little or no effort to explain the result, and have taken refuge in rather empty phrases, such as "he who does a thing through another does it himself," or the endlessly repeated formula of "*respondeat superior*," which in itself means nothing more than "look to the man higher up."

[44] The Eleventh Circuit has defined a "policy" as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  *Id*.  "A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Monell*, 436 U.S. at 690-91).

11

"lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*.[45]

The Supreme Court added a gloss to *Monell's* "policy or custom" requirement in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), saying that "municipal liability may be imposed for *a single decision* by municipal *policymakers* under appropriate circumstances." 475 U.S. at 480 (emphasis supplied). The Eleventh Circuit clarified *Pembaur's* gloss in *Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997), saying that "[m]unicipal liability under 42 U.S.C. § 1983 may be premised upon *a single illegal act* by a municipal officer *only when* the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses *final policymaking authority over the relevant subject matter*." *Id*. at 510 (alteration and emphasis supplied); *see also McMillian v. Monroe County*, 520 U.S. 781, 784 (1997) (observing that municipal policies or customs "may be set by the government's

---

[45] The evolution of modern § 1983 doctrine actually began a decade prior to the *Monell* decision, with the case of *Monroe v. Pape*, 365 U.S. 167 (1961). *Monroe* opened the sluice to a "swelling tide of § 1983 actions [which] threaten[ed] to engulf the federal courts . . . ." *Thurman v. Rose*, 575 F. Supp. 1488, 1491 (N.D. Ind. 1983) (alterations supplied). Even so, the Supreme Court attempted to limit the force of its decision in *Monroe* by holding that the City of Chicago, the municipal defendant in that case, was *not* a "person" subject to suit under the statute and, therefore, could not be held liable for the actions of its officers. *Monroe*, 365 U.S. at 192. Blanket immunity for municipalities lasted until the 1978 decision in *Monell*, when the Court reversed that aspect of its holding in *Monroe*, and held that a municipality *did* qualify as a "person" liable to suit under § 1983. "The *Monell* . . . decision made any city, county, or local jurisdiction subject to a lawsuit whenever one of its employees abridged any federal constitutional or statutory command." Randall R. Rader, *Section 1983, The Civil Civil Rights Action: Legislative and Judicial Directions*, 15 CUMB. L. REV. 571, 580 (1985) (footnote omitted).

12

lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy'") (quoting *Monell*, 436 U.S. at 694).  Furthermore,

> [t]he Eleventh Circuit "has interpreted *Monell*'s policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion. . . .  Thus, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to *meaningful* administrative review."

*Quinn v. Monroe County,* 330 F.3d 1320, 1325 (11th Cir. 2003) (citations omitted) (second bracketed alteration in original) (emphasis supplied).

### 1.    Claims against the Town of Anderson for the actions of defendant Mark Bowers

The Town of Anderson, Alabama denies liability for the actions of its Police Chief, Mark Bowers, on the grounds that he is not a "policymaker" under *Monell*.[46] Specifically, the Town of Anderson argues that,

> "[u]nder Alabama law, the policymaking authority of a municipality is vested in the Mayor and the City or Town Council.  *See* § 11-43-81, Code of Alabama (1989) ("The mayor shall be the chief executive officer, and shall have general supervision and control of all other officers and affairs of the city or town . . . .") (emphasis supplied); § 11-43-43, Code of Alabama (1989) ("All legislative powers and other powers granted to cities and towns shall be exercised by the council . . . ."). The Chief of Police of a municipality under Alabama law is expressly subordinate to the City or Town Council.  *See* § 11-43-5, Code of Alabama (1989) ("The council may provide for a tax assessor, tax collector, chief of police and chief of the fire department and shall

---

[46] Doc. no. 51 (Brief in Support of Motion to Dismiss by Town of Anderson), at 9.

specifically prescribe their duties.") (emphasis supplied); *see also Beasley v. McCorkle*, 184 So. 904 (Ala. 1938).[47]

The authorities cited by the Town of Anderson do not, however, resolve the issue of whether *Police Chief* Mark Bowers's law enforcement decisions are subject to "*meaningful* administrative review." *See Quinn v. Monroe County,* 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis supplied).  In *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991), the court reversed an order dismissing the plaintiff's 42 U.S.C. § 1983 claims for employment discrimination against city officials on the grounds that its task

> is not to determine who, in fact, wields final policy-making authority but only to consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss.  Without question, plaintiff's allegations against the police chief and city manager *leave open the possibility* of city liability based on the actions of a policy-maker.  The district court on remand will need to consider all available evidence of policy-making authority before deciding the issue of municipal liability.  *See Mandel* [*v. Doe*], 888 F.2d [783,] 793 [(11th Cir.1989)] ("The court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law.")

*Id.* at 1480 (alterations and emphasis supplied).

As in *Brown*, the present plaintiff's allegations against Police Chief Mark Bowers "leave open the possibility" that he wielded final policy-making authority on law enforcement issues.  At the stage of a motion to dismiss, the parties  have not yet

---

[47] *Id.* at 9-10 (alteration supplied).

had the opportunity to submit evidence on the Town of Anderson's relevant ordinances, rules, regulations, customs, and practices. Accordingly, this court will deny the motion to dismiss the claims against the Town of Anderson based on the actions of its Police Chief, Mark Bowers.

### 2. Claims against the Town of Lexington for the actions of defendant Lee Bradford

Like the Town of Anderson, the Town of Lexington, Alabama denies liability for the actions of its Police Officer, Lee Bradford, on the grounds that he is not a "policymaker" under *Monell*.[48] In response, plaintiff concedes that his complaint "does not include a *Monell* claim against the Town of Lexington."[49] Accordingly, this court will grant the motion to dismiss the claims against the Town of Lexington based on the actions of defendant Bradford.

### 3. Claims under state law against both Towns

The Towns of Anderson and Lexington also argue that plaintiff's state-law claims "for a 'negligent assault and battery' or 'negligent trespass' are not maintainable. . . . The sole state law claim maintainable in this action against the Town[s] is a single claim for simple negligence under § 11-47-190, Code of Alabama

---

[48] *See generally* doc. no. 89 (Motion to Dismiss by Town of Lexington), at 2 (arguing that "[t]he Second Amended Complaint fails to state a claim under 42 U.S.C. § 1983 against the Town cognizable under *Monell*") (alteration supplied).

[49] Doc. no. 91 (Response to Motion to Dismiss by Town of Lexington), at 1.

(1975)."[50]  In response, plaintiff concedes that municipal liability "under state law is limited to negligence."[51]  "This, however, is not a basis for dismissal of the complaint, only for limiting plaintiff to a single simple negligence claim."[52]  Accordingly, this court will construe plaintiff's complaint as stating only a single, simple, negligence claim against each Town.

## B.    Claims Against the Individual Defendants

All of the individual defendants interpose as a defense the doctrine of qualified immunity, which provides "complete protection for governmental officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001). Because qualified immunity is a defense not only from liability, but also

---

[50] Doc. nos. 50 (Motion to Dismiss by Town of Anderson), at 2; 89 (Motion to Dismiss by Town of Lexington), at 2 (alteration supplied).  Like many of the briefs in this action, the motions to dismiss by the Towns of Anderson and Lexington contain virtually indistinguishable language and make identical points.

[51] Doc. no. 62 (Response to Motion to Dismiss by Town of Anderson), at 11.

[52] Doc. no. 91 (Response to Motion to Dismiss by Town of Lexington), at 1.

from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted).

> In order to receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).  If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity . . . .

*Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *see also*, *e.g.*, *Chesser v. Sparks*, 248 F.3d 1117, 1121-22 (11th Cir. 2001); *Lassiter v. Alabama A & M University Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*).

When a law enforcement officer establishes that he was acting within his discretionary authority in performing a contested act, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194; *see also*, *e.g.*, *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff.") (citing *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996); *Barnette v. Folmar*, 64 F.3d 598, 600 (11th Cir. 1995); *Lassiter*, 28 F.3d at 1150 n. 3).

Qualified immunity "generally turns on the 'objective legal reasonableness' of

17

the [allegedly unlawful official] action . . . assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken  . . . ." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819, 818) (alterations supplied).  Once the qualified immunity defense is raised, it is the *plaintiff* who "bear[s] the burden of showing that the federal 'rights' allegedly violated were 'clearly established.'"  *Lassiter*, 28 F.3d at 1150 n.3 (quoting *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989) (alteration supplied)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)); *Busby*, 931 F.2d at 773 ("The plaintiff has the burden of showing that the defendant violated clearly established constitutional rights.").

Taking the allegations in the plaintiff's complaint as true, "[i]f reasonable people could disagree about whether a [police officer] — in the light of the then clearly established law — responded reasonably to the complaint's alleged circumstances, qualified immunity must apply:  the [police officer] has responded in an arguably reasonable way."  *Marsh*, 268 F.3d at 1030 n.8 (alterations supplied).

> For a court to conclude that — in the light of the clearly established law at the pertinent time — a hypothetical jury, considering all the complaint's alleged facts as true, could decide that the defendant responded unreasonably is not sufficient to overcome the qualified immunity defense raised in a Rule 12(b)(6) motion.  This formulation is nothing more than saying that reasonable people might or might not think — this is, could disagree about whether — the government actor behaved unreasonably.  *It is this kind of situation — that is, one where the alleged facts (accepted as true) leave the legal consequences*

*uncertain — for which the defense of qualified immunity was designed.*

*Id*. (emphasis supplied).

1.    **Claims for unlawful entry against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis, and the Town of Anderson**

    a.    **Entry to effectuate a *Terry* stop by Lexington Police Officer Lee Bradford and Anderson Police Chief Mark Bowers**

In order for officers to legally make an investigative stop, they must have "reasonable suspicion" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 37 (1968). "[F]rom the moment that the reasonable suspicion standard was first announced, the Supreme Court recognized that an investigatory stop [or "*Terry* stop"] may involve the use of some degree of force by the investigating officer." *United States v. Rouse*, No. 409-004, 2009 WL 1550860, at * 4 (S.D. Ga. June 1, 2009) (alterations supplied).

In light of *Terry*, "when a suspect voluntarily opens the door of his residence in response to a non-coercive 'knock and talk' request, the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity." *United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007). "[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976) (alteration supplied).

19

When Lexington Police Officer Lee Bradford and Anderson Police Chief Mark Bowers responded to the 911 telephone call, they did not have "a reasonable suspicion" of criminal activity on the part of plaintiff that would have justified their warrantless entry into his home to effectuate a *Terry* stop.  In the brief in support of his motion to dismiss, Chief Bowers attempts to establish "reasonable suspicion" by arguing that plaintiff "was asked about the [911 telephone caller] and allegedly responded, suspiciously, 'that he did not know the woman, though he did know her sister.'"[53]  In an unrelated section of the brief, Bowers also asserts that he

> had just received and responded to a 911 call from a distressed woman; when he arrived at plaintiff's porch where she was located, she alleged vaguely and generally that she was in danger, and plaintiff was the only one around.  When plaintiff was confronted with these allegations, he admitted at least knowing who she was but acted more concerned about horses than a human, [and] said he was leaving the location where he and the officers were.[54]

In their joint reply brief, Chief Bowers and the Town of Anderson contend that "the complaint . . . alleges that the woman outright told the officers that she was 'abandoned' on plaintiff's porch — as though she had been kidnapped and then

---

[53] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 5 (quoting doc. no. 44 (Second Amended Complaint) ¶ 16) (alteration supplied).  Because the motion to dismiss by Bradford incorporates by reference the motions to dismiss by Bowers and the Town of Anderson, this discussion will largely rely on Bowers' motion.  *See* doc. no. 81 (Motion to Dismiss by Lee Bradford), at 4 (incorporating by reference the motions to dismiss by Bowers and the Town of Anderson).

[54] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 20 (alteration supplied).

20

dumped there," and that plaintiff was himself suspected of the horse abuse.[55]  In their joint notice of supplemental authority, those defendants also claim that "plaintiff did not immediately answer the door when the officers knocked, thereby giving the officers additional, legitimate concerns for their safety and the safety of the woman on the porch."[56]

Several of defendants' arguments rest on troubling factual liberties with the construction of plaintiff's complaint.  For example, Chief Bowers argues that, when the officers answered the 911 call, "plaintiff was the only one around."[57]  The complaint alleges, however, that the caller was found *outside* plaintiff's house,[58] while plaintiff was *inside* his home, and was awakened *by his girlfriend.*[59]  Bowers also asserts that "the complaint . . . alleges that the woman outright told the officers that she was 'abandoned' on plaintiff's porch — as though she had been kidnapped and then dumped there."[60]  Upon review, the complaint alleges merely that the woman "*had been* abandoned,"[61] without stating how or by whom she came to be abandoned,

---

[55] Doc. no. 64 (Reply in Support of Motion to Dismiss by Mark Bowers and Town of Anderson), at 3-4.

[56] Doc. no. 73 (Notice of Supplemental Authority in Support of Motion to Dismiss by Mark Bowers and Town of Anderson), at 4.

[57] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 20.

[58] Doc. no. 44 (Second Amended Complaint) ¶ 11.

[59] *Id.* ¶ 15.

[60] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 3-4.

[61] Doc. no. 44 (Second Amended Complaint) ¶ 10 (emphasis supplied).

without indicating how the officers learned that she had been abandoned, and certainly without asserting that she *told* the officers that she had been abandoned, or that she made any reference to a kidnapping.

Other attempts to establish probable cause are simply not convincing.  For example, Chief Bowers and the Town of Anderson contend that plaintiff's failure to "*immediately* answer the door when the officers knocked . . . [gave them] legitimate concerns for their safety and the safety of the woman on the porch."[62]   There is nothing inherently threatening about the failure to *immediately* answer one's door in the early hours of the morning, when the instant events occurred, and when most people are asleep.[63]   Further, Bowers claims that, when the officers questioned plaintiff about the woman, he "responded, *suspiciously*, 'that he did not know the woman, though he did know her sister.'"[64] Again, there is nothing inherently suspicious about such a statement.  To the extent that defendants are arguing that suspicion arises *not* from *what* plaintiff did and said, but from *how* he did and said it, they are either asking this court to assume facts that have not been alleged in the complaint, or to construe the facts that have been alleged in their favor.  Both

---

[62] Doc. no. 73 (Notice of Supplemental Authority in Support of Motion to Dismiss by Mark Bowers and Town of Anderson), at 4 (alteration and emphasis supplied).

[63] *See* doc. no. 44 (Second Amended Complaint) ¶ 10 (alleging the events at issue to have occurred "[i]n the early morning hours") (alteration supplied).

[64] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 5 (quoting doc. no. 44 (Second Amended Complaint) ¶ 16) (emphasis supplied).

approaches are barred by the requirement that a district court ruling upon a motion to dismiss must draw all reasonable inferences in *plaintiff's* favor.  *See Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*).

Other arguments for probable cause are internally inconsistent.  In the brief in support of his motion to dismiss, Chief Bowers submits a statement of facts that relegates all references to the alleged horse abuse to the footnotes,[65] and states without support that plaintiff was informed of the alleged horse abuse and "acted more concerned about horses than a human."[66]  In their reply brief, however, Bowers and the Town of Anderson argue that plaintiff was himself suspected of the horse abuse.[67] In addition to the fact that the assertion that plaintiff "acted more concerned about horses than a human" is not supported by the allegations in the complaint, and represents another effort to construe the facts against plaintiff and in favor of defendants in violation of *Marsh*, 268 F.3d at 1023, it appears to contradict the argument that plaintiff was himself suspected of the horse abuse — a shift in position that suggests an attempt to establish reasonable suspicion through hindsight.

Accordingly, this court is left with the following facts as an alleged basis for probable cause:  Lexington Police Officer Lee Bradford, Anderson Police Chief Mark

---

[65] *See* doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 3 n.1-2.

[66] *Id.* at 20.

[67] Doc. no. 64 (Reply in Support of Motion to Dismiss by Mark Bowers and Town of Anderson), at 3.

Bowers, and Anderson Reserve Police Officers Matt Wigginton and Jan Montgomery "received and responded to a 911 call from a distressed woman"; when the four officers arrived outside plaintiff's home, where the distressed woman was located, "she alleged vaguely and generally that she was in danger," and that someone had been beating plaintiff's horses; when plaintiff was confronted with her allegations, he admitted knowing the woman's sister; and, when plaintiff was informed of the woman's allegations of animal abuse, he "said he was leaving the location where he and the officers were" to check on his horses.[68]  This court also notes that the woman was highly intoxicated,[69] and that she did not make any accusations against plaintiff,[70] in spite of the fact that she was sitting on his porch while he was questioned by police.[71]  Because the "whole picture" does not give rise to a reasonable suspicion to justify a *Terry* stop,[72] or even an arguably reasonable suspicion to trigger qualified immunity, this court will deny the motions to dismiss the unlawful entry claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson, *but only to the extent that they arise from Bradford and*

---

[68] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 3, 20.

[69] Doc. no. 44 (Second Amended Complaint) ¶ 10.

[70] *Id.* ¶ 12.

[71] *Id.* ¶ 14.

[72] *See United States v. Cortez*, 449 U.S. 411, 417 (1981) (holding that, in assessing the existence of probable cause for making a *Terry* stop, "the totality of the circumstances — the whole picture — must be taken into account").

*Bowers' entry to effectuate the Terry stop*.

> **b.** **Entry to stop the confrontation between plaintiff and Lexington Police Officer Lee Bradford by Anderson Police Chief Mark Bowers, and Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis**

The Eleventh Circuit has recognized that the Fourth Amendment is not absolute.

> Although there is a strong preference for searches and entries conducted under the judicial auspices of a warrant, the United States Supreme Court has crafted a few carefully drawn exceptions to the warrant requirement to cover situations where "the public interest requires some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 2590, 61 L. Ed. 2d 235 (1979).  One such exception is that the police may enter a private premises and conduct a search if "exigent circumstances" mandate immediate action.  *See Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949-50, 56 L. Ed. 2d 486 (1978).

*United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002).

The "exigent circumstances" exception to the warrant requirement "encompasses several situations where it is simply not feasible for an officer to obtain a warrant, including the danger of escape, the destruction of evidence, *the risk of harm to the public or police*, the mobility of a vehicle, and hot pursuit."  *United States v. McGough*, 412 F.3d 1232, 1238 (11th Cir. 2005) (emphasis supplied).  "Thus, for example, the courts have upheld exigent circumstances entries to break up a violent fight."  *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007).  *See also, e.g.,*

25

*Brigham City v. Stuart*, 547 U.S. 398, 406 (2006) (permitting a warrantless entry after officers observed a "fracas" occurring inside the residence, during which a juvenile struck an adult in the face).

When Anderson Police Chief Mark Bowers and Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis observed plaintiff punch Lexington Police Officer Lee Bradford,[73] that "exigency" justified their warrantless entry into plaintiff's house to stop the fracas.  The allegations that Bradford illegally entered plaintiff's home,[74] that he refused to leave the doorway,[75] and that he shoved plaintiff *before* plaintiff punched Bradford[76] — even if true — do not disprove the existence of a "risk of harm to police" *after* plaintiff punched Bradford.  Accordingly, this court will grant the motions to dismiss the unlawful entry claim against Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis.  This court will also grant the motions to dismiss the unlawful entry claims against Anderson Police Chief Mark Bowers and the Town of Anderson, *but only to the extent that they arise from Bowers' entry to stop the fight between plaintiff and Bradford.*

## 2.    Claims for illegal arrest and imprisonment against Lexington Police

---

[73] *See* doc. no. 44 (Second Amended Complaint) ¶ 28 (admitting that plaintiff "punched Bradford a single time").

[74] *Id.* ¶ 21.

[75] *Id.* ¶ 23.

[76] *Id.* ¶ 27.

**Officer Lee Bradford, Anderson Police Chief Mark Bowers, Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis, and the Town of Anderson**

a.   **Federal-law claims for illegal seizure against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis, and the Town of Anderson**

Thirty years ago, the Eleventh Circuit held that

> [t]he common law recognized the right of a citizen to use reasonable force to resist an unlawful arrest. *E.g., Bad Elk v. United States*, [177 U.S. 529 (1900)]. The common-law rule, however, has been greatly eviscerated, if not virtually abolished, in this circuit. *United States v. Danehy*, 680 F.2d 1311, 1315-16 (11th Cir. 1982).

*United States v. Bailey*, 691 F.2d 1009, 1018 (11th Cir. 1982). While a rule allowing the use of reasonable force to resist an unlawful arrest

> might have been an essential counterweight to oppressive authority in an earlier day, our civilized society could not abide it. We do not need citizen avengers who are authorized to respond to unlawful police conduct by gunning down the offending officers. Other remedies are available for those police actions that are based on unreasonable suspicions or technically defective warrants.

*United States v. Johnson*, 542 F.2d 230, 233 (5th Cir. 1976) (footnotes omitted).[77]

Therefore, under federal law, "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest." *United States v. Dawdy*,

---

[77] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

46 F.3d 1427, 1431 (8th Cir. 1995).

Even so, Alabama Code § 13A-3-25(a) provides that a person

in lawful possession or control of premises, as defined in Section 13A-3-20, or a person who is licensed or privileged to be thereon, may use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon such premises.

Likewise, the commentary to Alabama Code § 13A-3-28 "allows a person to use reasonable force to resist an unlawful arrest."  Commentary to Ala. Code 1975, § 13A-3-28 at 71.  Thus, in contrast to federal law, Alabama law allows a person to use reasonable force to defend his property or, arguably, although not explicitly stated, to resist an unlawful arrest.

Despite the apparent conflict between federal and state law, district courts in Alabama have recognized the applicability of Alabama Code § 13A-3-28 to Fourth Amendment claims.  *See Galloway v. City of Abbeville*, No. 11-663, 2012 U.S. Dist. LEXIS 90974, *18 (M.D. Ala. July 2, 2012) (denying a motion to dismiss a Fourth Amendment excessive force claim); *Exford v. Norgard*, No. 10-1071, 2012 U.S. Dist. LEXIS 120104, *25 (M.D. Ala. Aug. 24, 2012) (denying a motion for summary judgment on a Fourth Amendment unlawful arrest claim).  In denying the motion to dismiss, the *Galloway* court reasoned that,

> while an officer has the power to use a reasonable amount of force in making a lawful arrest or investigatory stop, *Graham* [*v. Connor*], 490 U.S. [386,] 396 [1989)] (citing *Terry v. Ohio*, 392 U.S. 1, 22-27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)), an Alabamian has the reciprocal right to use force in resisting an unlawful arrest. *See, e.g., Sanders v. State*, 181 Ala. 35, 61 So. 336 (Ala. 1913) ("an attempt unlawfully to arrest gives the person sought to be arrested a right to resist"). Since the officers lacked a reason to arrest Galloway under the facts alleged, he actually would have had some leeway to resist once they attacked him and began beating him. So even assuming Galloway resisted in some manner after the attack began, he had a right to do so.

*Galloway*, 2012 U.S. Dist. LEXIS 90974, at *17-18 (alterations and emphasis supplied).

Because Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police Officer Matt Wigginton lacked even arguable probable cause to justify their warrantless entry into plaintiff's home, they also lacked even arguable probable cause to use force to effectuate their warrantless entry, which entitled plaintiff to "some leeway" to resist. Plaintiff objected to the officers' presence in his home, and told them repeatedly to leave and to obtain a warrant before returning.[78] Rather than complying, Bradford stopped in plaintiff's doorway and held the door open. Plaintiff told Bradford that he was going to shut the door and slowly began to push the door shut.[79] Bradford responded by shoving plaintiff, and plaintiff,

---

[78] Doc. no. 44 (Second Amended Complaint) ¶ 22.

[79] *Id.* ¶¶ 23-25.

in turn, punched Bradford.[80]   Thus, even though plaintiff resisted Bradford's use of

force, he had a right to do so.  Accordingly, this court will deny the motions to dismiss

the federal-law illegal seizure claims against Lexington Police Officer Lee Bradford,

Anderson Police Chief Mark Bowers, Lauderdale County Deputy Sheriffs James

Distefano and Patrick Davis, and the Town of Anderson based on a theory of the

officers' personal participation.

> **b.    Federal-law claims for failure to intervene to prevent illegal seizure against Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis**

Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis have

moved to dismiss plaintiff's illegal seizure claim to the extent that it relies on their

failure to intervene.[81]   In response, plaintiff concedes that he "does not seek to hold

[Distefano and Davis] liable as observing officers who failed to act."[82]   Accordingly,

this court will grant the motions to dismiss the illegal seizure claims against

Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis based on a

theory of their failure to intervene.

> **c.    State-law claims for false arrest and imprisonment against Lexington Police Officer Lee Bradford, Anderson Police Chief**

---

[80] *Id.* ¶¶ 27-28.

[81] *See* doc. no. 57 (Brief in Support of Motion to Dismiss by Patrick Davis and James Distefano), at 12-13.

[82] Doc. no. 61 (Response to Motion to Dismiss by Patrick Davis and James Distefano) (alteration supplied).

**Mark Bowers, and the Town of Anderson**

Under Alabama law, the torts of false imprisonment and arrest

> have different elements. *See Walker v. City of Huntsville*, 62 So.3d 474, 492 (Ala. 2010) (explaining that Alabama Code § 6-5-170 "defines false imprisonment as 'the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty'"); *see also Higgins v. Wal-Mart Stores, Inc.*, 512 So.2d 766 (Ala. 1987) ("in a cause of action for false arrest, a plaintiff must prove that the defendant caused him to be arrested without probable cause"), *overruled on other grounds, Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280 (Ala. 1993).

*Griffin v. Beasley*, No. 12-196, 2012 U.S. Dist. LEXIS 84271, *15 (M.D. Ala. June 19, 2012). As explained in the discussion of plaintiff's illegal seizure claims, *supra*, because Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police Officer Matt Wigginton lacked even arguable probable cause to justify their warrantless entry into plaintiff's home, they also lacked arguable probable cause to use force to effectuate their warrantless entry, which entitled plaintiff to resist under Alabama law. Accordingly, this court will deny the motions to dismiss the state-law false arrest and imprisonment claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson.

> **3.   Claims for failure to intervene to prevent the use of excessive force against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson**

31

Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson have moved to dismiss plaintiff's excessive force claims to the extent that they rely on their failure to intervene.[83]   In response, plaintiff concedes that he "does not seek to hold Bowers liable as an observing officer who failed to act,"[84] and that he "incorporates his response" to the motions to dismiss by Bowers and the Town of Anderson into his response to the motion to dismiss by Bradford.[85]   Accordingly, this court will grant the motions to dismiss the excessive force claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson based on a theory of the officers' failure to intervene.

### 4. Claims for malicious and retaliatory prosecution against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson

#### a. Federal-law claims for malicious prosecution against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson

---

[83] *See* doc. nos. 48 (Motion to Dismiss by Mark Bowers), at 2-3; 50 (Motion to Dismiss by Town of Anderson), at 1-2; 81 (Motion to Dismiss by Lee Bradford), at 3.  In contrast, Davis and Distefano have *not* moved to dismiss, and have instead filed an answer to the claim for failure to intervene to prevent excessive force.  *See* doc. no. 57 (Brief in Support of Motion to Dismiss by Patrick Davis and James Distefano) (stating that "[a]n Answer has been contemporaneously filed herewith for Count VI of the Second Amended Complaint, which alleges excessive force") (alteration supplied).

[84] Doc. no. 62 (Response to Motion to Dismiss by Mark Bowers and Town of Anderson), at 18.

[85] Doc. no. 88 (Response to Motion to Dismiss by Lee Bradford), at 1.

To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things:

> (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood* [*v. Kesler*], 323 F.3d [872,] 881 [(11th Cir. 2003)]. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood* 323 F.3d at 882.[86]

*Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2003) (alterations supplied).

Here, plaintiff has established the first prong of a § 1983 malicious prosecution claim by alleging that Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police Officers Matt Wigginton and Jan Montgomery conspired to punish him for filing notices of claim against their employers by lying to a district attorney about the incident, which resulted in plaintiff's two criminal trials and eventual acquittal.

Specifically, after a grand jury issued a "no bill" on the charges against him,

---

[86] In a footnote, the *Grider* court notes that, "'[w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state.'" *Grider v. City of Auburn*, 618 F.3d 1240, 1256 n.24 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 n.17 (11th Cir. 2003)).

plaintiff filed notices of claim with the Towns of Anderson and Lexington.[87]   In retaliation for plaintiff's notices of claim, defendants allegedly "met and agreed to a unified (false) version of events, went to the district attorney, and convinced the district attorney to resubmit the case to another grand jury."[88]

In turn, the new grand jury returned an indictment against plaintiff for two counts of assault in the second degree (a felony), and one count of resisting arrest.[89] Plaintiff was first tried in December of 2010, but the trial ended in a "hung jury."[90] Plaintiff was then re-tried in January of 2011, and was acquitted of all charges.[91]   As a result, plaintiff has incurred legal bills and expenses, and suffered emotional injuries and damages, including embarrassment and humiliation.[92]

Further, plaintiff has established the second prong of a § 1983 malicious prosecution claim by showing that his arrest violated the Fourth Amendment.   As explained in the discussion of plaintiff's illegal seizure claims, *supra*, because defendants lacked even arguable probable cause to justify their warrantless entry into

---

[87] Doc. no. 44 (Second Amended Complaint) ¶¶ 42-43.

[88] *Id.* ¶ 44.   Defendants' false version of events allegedly included:  a general denial of plaintiff's allegations; a claim that defendants initially entered plaintiff's home with consent; a description of plaintiff as intoxicated, aggressive, and threatening; a claim that plaintiff slammed the door on Bradford without giving the officer a chance to leave; and a claim that Bradford only acted in self-defense, and never shoved plaintiff.  *Id.* ¶ 45.

[89] *Id.* ¶ 47.

[90] *Id.* ¶ 48.

[91] *Id.*

[92] *Id.* ¶ 49.

34

plaintiff's home, they also lacked even arguable probable cause to use force to effectuate their warrantless entry, which entitled plaintiff to resist under Alabama law.

Because plaintiff has established both prongs of a § 1983 malicious prosecution claim, this court will deny the motions to dismiss the federal-law malicious prosecution claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson.

>        **b.**     **Federal-law claims for retaliatory prosecution against defendants Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson**

"[T]here is no retaliation claim under the *Fourth* Amendment separate and distinct from . . . malicious prosecution and false arrest claims" under that amendment. *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003) (alteration emphasis supplied). Thus, "the only cause of action for retaliation that arguably applies here is retaliatory prosecution in violation of the *First* Amendment." *Id.* (emphasis supplied). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Constitutional claims for *retaliation* are generally analyzed under a three-part test that requires a plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation;

and (3) that the protected activity caused the retaliation." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004).   A plaintiff who claims retaliatory *prosecution* must also establish a fourth element: *i.e.,* an absence of probable cause. *Hartman*, 547 U.S. at 265-66.

Here, defendants argue that plaintiff cannot prove the first element of a claim for retaliatory protection because his speech did not involve a matter of public concern and, thus, did not deserve constitutional protection.[93]   In support, defendants cite *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997), and other *employment* cases, for the proposition that no public concern was implicated where "'[t]he notice solely complains of Holbrook's personal grievance with respect to his alleged treatment by the City of Alpharetta; it does not refer to any practice or course of conduct by the police department," and "does not seek redress beyond improving Holbrook's personal . . . situation."[94]   In response, plaintiff correctly argues that defendants' cases are limited to the employment context.[95]

In *Stone v. Felsman*, No. 3:10-0442, 2011 U.S. Dist. LEXIS 125909 (M.D. Pa.

---

[93] Doc. no. 49 (Brief in Support of Motion to Dismiss by Mark Bowers), at 33-35.

[94] *Id.* at 34; doc. no. 64 (Reply in Support of Motion to Dismiss by Mark Bowers and Town of Anderson), at 16 (both quoting *Holbrook*, 112 F.3d at 1530).  In fact, the *Holbrook* court held that the plaintiff's complaint "does not seek redress beyond improving Holbrook's personal *employment* situation." *Id.* at 1530 (emphasis supplied).  It is telling that defendants use ellipses to remove the all-important term "employment."

[95] Doc. no. 62 (Response to Motion to Dismiss by Town of Anderson), at 19.

Nov. 1, 2011), a plaintiff sued two police officers to challenge his arrest.  *Id.* at *5.

In denying the officers' motion for summary judgment on plaintiff's claim for

retaliatory prosecution, the court squarely faced the issue of whether the standard for

constitutionally-protected speech in retaliation cases involving *government employees*

also extends to retaliation cases involving *private citizens*, and held that it does not.

> The defendants urge the court to find that they are entitled to
> summary judgment on plaintiff's First Amendment retaliation claim
> because the plaintiff cannot establish that he engaged in any conduct or
> protected speech by the First Amendment.  More specifically, the
> defendants argue that the plaintiff's speech did not relate to a matter of
> public concern, and, therefore, the plaintiff's speech was not protected
> by the First Amendment.

> The court finds that the defendants' argument is misplaced.  *It
> appears that the defendants are relying on the standard applicable to a
> plaintiff, who is a public employee, bringing a First Amendment
> retaliation claim*.  Under that circumstance, a public employee's speech
> is protected activity if "the statement involved a matter of public
> concern."  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d
> Cir. 2006). However, *when a First Amendment retaliation claim is
> brought by a private citizen, the individual's speech need not be on a
> matter of public concern in order to constitute protected activity.  See
> Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008)
> ("Because Williams was not a public employee when he criticized Bland,
> his speech need not have been on a matter of public concern for it to fall
> within the protection of the First Amendment for the purposes of this
> action.").  Thus, as explained above, a private citizen's speech is entitled
> to First Amendment protection unless it falls into one of the "narrow
> categories deemed unworthy of full First Amendment protection."
> *Eichenlaub* [*v. Township of Indiana*], 385 F.3d [274,] 282-83 [(3d Cir.
> 2004)].

*Stone*, 2011 U.S. Dist. LEXIS 125909, at *24-25 (alterations and emphasis supplied).

Upon holding that plaintiff's speech did *not* have to involve a matter of public concern, the *Stone* court decided the issue of whether that speech merited First Amendment protection.

> According to the plaintiff, the relevant speech was his ongoing cell phone conversation regarding personal matters, and his subsequent exchange with defendant [Officer] Shutkufski after his cell phone broke. More specifically, plaintiff indicates that after defendant [Officer] Shutkufski knocked the cell phone out of his hand, he stated "why did you hit me" and "they broke my fucking phone."

> With respect to plaintiff's comments "why did you hit me" and "they broke my fucking phone," the court finds that the plaintiff's speech is entitled to First Amendment protection.

*Stone*, 2011 U.S. Dist. LEXIS at *25-26 (alterations supplied).

In light of *Stone*, the plaintiff in this case has established the "protected speech" prong of his retaliatory prosecution claim. Defendants do not argue that plaintiff's claims against the Towns of Anderson and Lexington fall into one of the "narrow categories" of unprotected speech, which include, *e.g.*, obscenity, "fighting words," and libel. *See Eichenlaub*, 385 F.3d at 282-83. Indeed, if even the offhand and profane remarks of "why did you hit me" and "they broke my fucking phone" are considered protected speech, then plaintiff's formal notices of claims are plainly entitled to constitutional protection.

Likewise, plaintiff has established the remaining elements of retaliatory

prosecution.  As explained in the section on malicious prosecution, *supra*, plaintiff alleges that Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and Anderson Reserve Police Officers Matt Wigginton and Jan Montgomery conspired to punish him for filing notices of claim against their employers by lying to a district attorney about the incident, which resulted in plaintiff's criminal trial and acquittal.[96]  Further, Bradford, Bowers, and Wigginton lacked even arguable probable cause to justify their warrantless entry into plaintiff's home, and also lacked even arguable probable cause to use force to effectuate their warrantless entry, which entitled plaintiff to resist under Alabama law.  Accordingly, this court will deny the motions to dismiss the federal-law malicious prosecution claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson.

> ### c.    State-law claims for malicious prosecution against Lexington Police Officer Lee Bradford and Anderson Police Chief Mark Bowers

As noted in the discussion of plaintiff's federal-law malicious prosecution claim, *supra*, a § 1983 malicious prosecution claim requires a showing of:

> (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood* [*v. Kesler*], 323 F.3d  [872,] 881 [(11th Cir.

---

[96] *See* doc. no. 44 (Second Amended Complaint) ¶¶ 42-43.

> 2003)].  As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood* 323 F.3d at 882.[97]  *The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999).

*Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. Ala. 2010) (alterations and emphasis supplied).  As plaintiff has established the elements of malicious prosecution under § 1983, he has also established the elements of malicious prosecution under Alabama law.  Accordingly, this court will deny the motions to dismiss the state-law malicious prosecution claims against Lexington Police Officer Lee Bradford and Anderson Police Chief Mark Bowers.

### 5.   Claims against Anderson Reserve Police Officer Matt Wigginton

Plaintiff filed his original complaint on March 28, 2011, naming Matt Wigginton as one of the defendants.[98]  Plaintiff's summons to Wigginton was returned

---

[97] In a footnote, the *Grider* court notes that, "'[w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state.'" *Grider v. City of Auburn*, 618 F.3d 1240, 1256 n.24 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d  872, 882 n.17 (11th Cir. 2003)).

[98] *See* doc. no. 1 (Complaint).

unexecuted on April 18, 2011.[99]  Plaintiff filed his first amended complaint on June 3, 2011, and his second amended complaint on July 22, 2011, again naming Wigginton as one of the defendants.[100]  Upon a review of the record, it appears to this court that plaintiff has not made any more attempts to effect service on Wigginton, who, in turn, has not filed an answer or otherwise entered an appearance.

In sum, plaintiff has not effected service on Wigginton, despite the passage of more than 120 days since the filing of all three versions of his complaint.  Federal Rule of Civil Procedure 4(m) provides that,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (alteration supplied).  Accordingly, this court will order plaintiff to show cause, in writing, on or before January 17, 2013, why his claims against Anderson Reserve Police Officer Matt Wigginton should not be dismissed for failure to serve and prosecute.

## IV.  CONCLUSION AND ORDER

---

[99] *See* doc. no. 7 (Summons Returned Unexecuted).  As an explanation for the fact that the summons was not executed, the docket entry states, "Return to Sender[,] no such number[,] unable to forward."  *See* docket sheet entry for doc. no. 7 (alterations supplied).

[100] *See* doc. nos. 25 (First Amended Complaint); 44 (Second Amended Complaint).

With regard to the two municipal defendants, this court DENIES the motion to dismiss the claims against the Town of Anderson for the actions of its Police Chief, Mark Bowers, GRANTS the motion to dismiss the claims against the Town of Lexington for the actions of its Police Officer, Lee Bradford, and construes plaintiff's complaint as stating only a single, simple, negligence claim against each Town.

With regard to the four individual defendants who filed motions to dismiss, this court GRANTS the motions to dismiss the unlawful entry claims against Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis; DENIES the motions to dismiss the unlawful entry claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson, *to the extent that they arise from Bradford and Bowers' entry to effectuate the Terry stop*; and GRANTS the motions to dismiss the unlawful entry claims against Bowers and the Town of Anderson, *to the extent that they arise from Bowers' entry to stop the fracas between plaintiff and Bradford*.

Further, the court DENIES the motions to dismiss the federal-law illegal seizure claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis, and the Town of Anderson based on a theory of the officers' personal participation; GRANTS the motions to dismiss the federal-law illegal seizure claims against

42

Distefano and Davis based on a theory of their failure to intervene; and DENIES the motions to dismiss the state-law false arrest and imprisonment claims against Bradford, Bowers, and the Town of Anderson.

Additionally, the court GRANTS the motions to dismiss the excessive force claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson based on a theory of the officers' failure to intervene.

The court also DENIES the motions to dismiss the state- and federal-law malicious and retaliatory prosecution claims against Lexington Police Officer Lee Bradford, Anderson Police Chief Mark Bowers, and the Town of Anderson.

The court does not address the viability of plaintiff's claims against the two defendants who have not filed motions to dismiss, Anderson Reserve Police Officer Matt Wigginton and Jan Montgomery.

Finally, this court ORDERS plaintiff to show cause, in writing, on or before January 17, 2013, why his claims against Anderson Reserve Police Officer Matt Wigginton should not be dismissed for failure to serve and prosecute.

DONE and ORDERED this 4th day of January, 2013.

United States District Judge

43